*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JASEN BARKER,

                         *Plaintiff-Appellant,*

        *v.*

ANDREW GOODRICH; KIMBERLY ADAMS;
PATRICK ALSTON; ALLAN CASEY; ROBERT
FOSTER; SHAWN FRYE; STEVEN GAUSE;
THOMAS HAMPTON; KEVIN HARRINGTON;
AARON RODGERS; DEB TIMMERMAN-
COOPER; LONDON CORRECTIONAL
INSTITUTION,

                       *Defendants-Appellees.*

No. 10-3195

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00946—Terence P. Kemp, Magistrate Judge.

Argued: April 26, 2011

Decided and Filed: August 10, 2011

Before: COLE and STRANCH, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christopher L. Trolinger, FARLOW & ASSOCIATES LLC, Dublin, Ohio, for Appellant. Jason Michael Fuller, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Christopher L. Trolinger, Beverly J. Farlow, FARLOW & ASSOCIATES LLC, Dublin, Ohio, for Appellant. Melissa Montgomery, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

————————————————

**OPINION**

————————————————

COLE, Circuit Judge.  On February 4, 2007, Plaintiff-Appellant Jasen Barker failed to stand during the 4:00 p.m. count.  He was then pulled from his cell at the London Correctional Institute, handcuffed, and placed in an observation cell where he remained for over twelve hours with his hands restrained behind his back.  During this time, Barker was forced to maintain an awkward and uncomfortable position, missed a meal, and was unable to push a button for water or pull down his pants to use the toilet; his requests for mental health services went unanswered.  Barker filed this action under 42 U.S.C. § 1983 against Defendants-Appellees the London Correctional Institution ("LCI") and eleven of its current and former employees (collectively, "Defendants") for violations of his Eighth Amendment rights.  Defendants moved for summary judgment and the district court granted the motion, finding that all Defendants were entitled to qualified immunity.  For the following reasons, we **AFFIRM in part** and **REVERSE in part** the judgment of the district court and **REMAND** for further proceedings.

**I.  BACKGROUND**

The events that took place on February 4, 2007 are highly disputed.  For the purposes of this appeal, the facts are construed in the light most favorable to Barker.  Those facts were described by the district court as follows:

> According to Mr. Barker, soon after he arrived at the London Correctional Facility, defendant Andrew Goodrich, a corrections officer, started to harass him. . . .
>
> Mr. Barker was being treated for depression.  His medications had a tendency to make him drowsy.  He would occasionally be sleeping during the four o'clock count.  Usually, the corrections officer conducting the count in his area would wake him up and tell him he had to be sitting up during count.  On the day in question, that did not happen.  Rather, he was awakened and immediately escorted to the Captain's office.  He was not sure, even after arriving there, why he was

being disciplined, but learned at some point that he was going to get a ticket for refusing to sit up during the count.

Mr. Barker believed that the shift officers had been told by his mental health treater, Dr. LeClaire, that his medications were causing him to sleep during the count and that he did not have to sit up for it. He was upset by the ticket and by the fact that he was going to be taken to isolation. One of the questions that is routinely asked to inmates being taken to isolation is whether they intend to harm themselves. He refused to answer the question. For that reason, he was sent to an observation cell (a "constant watch" cell) so that a guard could watch him at all times.

Mr. Barker had just come out of a similar cell at a different institution when his deposition was taken. He said the correct procedure for taking an inmate to the observation cell was to put him in a processing cell first where his handcuffs and clothing would be removed and a suicide gown and blanket would be issued. That did not happen at London.

*Barker v. Goodrich*, No. 2:07-cv-946, 2010 WL 55719, at *2 (S.D. Ohio Jan. 4, 2010).

While Barker was in the processing room, before he was placed in the observation cell, an officer asked to remove the cuffs; Barker asked to see mental health first because he was afraid of going into the cell. The officer waved off Barker's request for mental health services, and a short while later Barker was placed in the observation cell still handcuffed and wearing his original clothing. No officer, including the two responsible for the constant watch, asked or offered to remove the handcuffs again until the handcuffs were removed the next morning around 8:00 a.m.

During the time he was in the cell and in handcuffs, he was not able to urinate or get a drink of water. His shoulders became stiff and he could not sit down or lie down comfortably, so he mostly stood up. Even at the time of his deposition, he had problems with his wrists, especially while writing letters.

*Id.* at *2.

Barker brought suit against Defendants in the United States District Court for the Southern District of Ohio under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. The parties agreed to refer the case to the magistrate judge.

Defendants moved for summary judgment, asserting that Barker suffered no injury, there was no constitutional violation, and several Defendants had no direct involvement with the situation. Defendants also asserted that the employee Defendants were entitled to Eleventh Amendment immunity in their official capacity, and all Defendants were entitled to qualified immunity. On January 10, 2010, the magistrate judge granted summary judgment to all Defendants on the basis of qualified immunity, finding that the evidence established a constitutional violation, but the right at issue was not clearly established.

Barker timely appealed.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the district court's grant of summary judgment de novo. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (internal quotation marks omitted). In reviewing a summary judgment motion, this Court views the evidence and reasonable inferences therefrom "in the light most favorable to" the non-moving party. *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Barker brings his claims under 42 U.S.C. § 1983. To succeed on a § 1983 claim, Barker must demonstrate that a person acting under color of state law "deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).

**B. London Correctional Institute**

First and foremost, the district court erred in granting qualified immunity to London Correctional Institute, which is not eligible for such immunity. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Assuming without deciding that LCI is an arm of the state, LCI could have asserted sovereign immunity under the Eleventh Amendment, which protects states from being sued in federal court by their own citizens, citizens of other states, and foreigners. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999); *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). The burden of establishing Eleventh Amendment immunity lies with the state, and the defense is waived if it is not raised. *See Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002); *see also Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006). Although Defendants nominally raised the Eleventh Amendment as a defense in their answer to Barker's complaint, they did not identify the claims or parties to which it applied, nor did they assert that LCI was entitled to this defense in their motion for summary judgment before the district court or their briefs on appeal. As a result of LCI's failure to assert this defense, it has been waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation mark omitted)). Consequently, LCI is entitled to neither qualified nor sovereign immunity, and the district court's grant of summary judgment to LCI is **REVERSED**.[1]

---

[1] Similar to and often conflated with Eleventh Amendment immunity is the issue of whether LCI is a "person" for the purposes of 42 U.S.C. § 1983, such that a claim under that section is cognizable. *Cf. Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This is an issue of statutory interpretation that was not raised in the district court, and we decline to reach it for the first time on appeal. *Cf. Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005); *Bolden v. Se. Penn. Transp. Auth.*, 953 F.2d 807, 821 (3d Cir. 1991) (en banc). We do not comment on LCI's ability to pursue such a defense upon remand to the district court. *But see Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (allowing a § 1983 suit to proceed against the State of Tennessee after finding that the state had waived Eleventh Amendment immunity by failing to timely assert it); *Settles*, 429 F.3d at 1104 (holding that, "by failing to raise its statute-based challenges in the district court, including that it is not a 'person' under § 1983, the Commission has waived these issues."); *Bolden*, 953 F.2d at 821 (finding the "person" issue a waivable, nonjurisdictional defense).

**C.    Claims for Monetary Damages Against Defendants in their Official Capacities**

Barker also named as defendants one prison employee in her official capacity and ten prison employees in both their official and individual capacities. Defendants sued in their official capacities are not eligible for qualified immunity. *Graham*, 473 U.S. at 167. However, to the extent Barker seeks monetary damages from these employees in their official capacities, his claims are barred by the Eleventh Amendment. *Thiokol Corp.*, 987 F.2d at 381. Defendants asserted this defense before the district court; although they have not raised the issue on appeal, the district court's erroneous grant of qualified immunity gave them neither reason nor opportunity to do so. As a result, we find the defense not to be waived, and **AFFIRM** the district court's grant of summary judgment to Defendants on the § 1983 claims for monetary damages against Defendants in their official capacities. To the extent Barker seeks declaratory and injunctive relief against Defendants in their official capacities, the suit may proceed. *Cf. Will*, 491 U.S. at 71 n.10 ("'[O]fficial-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Graham*, 473 U.S. at 167 n.14)).

**D.  Qualified Immunity**

Finally, the employee Defendants assert their entitlement to qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defendants raise a qualified immunity defense, "it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). We apply a two-prong test to qualified immunity claims, determining "whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). We may "exercise [our] sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances." *Id.* at 236.

### 1. Constitutional Violation

The district court found that Defendants' alleged conduct violated Barker's Eighth Amendment rights. Defendants dispute this, arguing that Barker has failed to provide evidence that they disregarded a substantial risk of serious harm. We disagree.

The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Barker asserts that Defendants violated his Eighth Amendment rights both by using excessive force and by confining him under inhumane conditions. Whether Defendants' alleged conduct constituted excessive force in violation of the Eighth Amendment depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

A conditions of confinement claim, in contrast, requires a finding of deliberate indifference, that is, "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). We have held that there is a substantial risk of serious harm "in the denial of the minimal civilized measure of life's necessities," *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834) (internal quotation mark omitted), including adequate food, clothing, shelter, medical care, and reasonable safety, *id.* at 727. An official's knowledge of the risk may be demonstrated through circumstantial evidence and inference, and "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* at 729 (quoting *Farmer*, 511 U.S. at 842).

The district court properly found that the evidence to support Barker's allegations, if true, establishes an Eighth Amendment violation on both bases. The evidence viewed in the light most favorable to Barker establishes that there was no

penological need to keep Barker handcuffed once he was placed in the detention cell, that Barker was nonresistant and did not refuse to have the handcuffs removed, and that Barker was handcuffed behind his back for twelve hours, during which time he missed a meal and was unable to sit or lie down without pain, use the restroom, or obtain water from the fountain. Thus, for no legitimate penological purpose, Barker was denied adequate access to water and a restroom, and forced to maintain an uncomfortable position for an extended period of time, subjecting him to a significant risk of wrist and arm problems, dehydration and thirst, and pain and damage to the bladder. This constitutes a denial of the minimal civilized measures of life's necessities. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730 (2002) (restraining prisoner in uncomfortable position and denying access to water for extended period violated Eighth Amendment); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508 (6th Cir. 2001) (limiting access to water for extended period violated Eighth Amendment); *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (limiting access to food and water for extended period and toilet overnight violated Eighth Amendment); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) (restraining prisoners in uncomfortable position for extended period violated Eighth Amendment). In addition, we may infer from the evidence that Defendants (1) knew that Barker's restraints would make it difficult for him to lie down comfortably, push a button for water, or remove his pants to access the restroom, and (2) chose to ignore these conditions as punishment for Barker's perceived misdeeds. These facts and inferences, taken as true, are sufficient to find that the force was applied maliciously and sadistically to cause harm and that Defendants disregarded a substantial risk of serious harm to Barker.

## 2. *Clearly Established*

Having found that Defendants' alleged conduct violated Barker's Eighth Amendment rights, we turn to whether the right at issue was clearly established on February 4, 2007. Barker argues that a series of cases clearly established at that time the principle that "restraining an individual under inhumane or undignified conditions for a prolonged period of time is a . . . violation of the Eighth Amendment," and that the

conditions at issue were inhumane and undignified. (Appellant Br. 21.) Defendants attempt to distinguish these cases on their facts, arguing that "there is no established case law that leaving an inmate in segregation for an extended period of time and failing to forcibly remove his handcuffs is an Eighth Amendment violation." (Appellee Br. 11-12.) Defendants' arguments fail on two counts: First, Defendants improperly rely on their version of the facts, rather than Barker's. Second, their attempts to distinguish fall perilously close to arguing that only cases with fundamentally or materially similar facts can provide fair notice—a contention the Supreme Court has squarely rejected. *See Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

A constitutional right is clearly established if:

The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). The "salient question" is "whether the state of the law in [2007] gave [Defendants] fair warning that their alleged treatment of [Barker] was unconstitutional." *Hope*, 536 U.S. at 741. The Supreme Court has looked to the reasoning and holdings of its prior cases, the reasoning and holdings of prior circuit cases, prison regulations, federal studies on point, and the "obvious cruelty inherent in the practice" to find that defendants had fair warning. *Id.* at 742-46.

Defendants had fair warning in 2007 that their conduct was unconstitutional. Case law from the Supreme Court, this Court, and other circuits established at that time that each condition seen here—restraining an inmate in an uncomfortable position, denying access to water, and denying access to the toilet—could rise to an Eighth Amendment violation if allowed to persist for an extended period. These cases, taken together with the notice given by normal prison practice and the obvious cruelty inherent in the conduct, clearly established that Defendants' alleged conduct—subjecting Barker

to all of these conditions at once for a period in excess of twelve hours—violated Barker's Eighth Amendment rights.

In *Hope v. Pelzer*, the Supreme Court held that the defendants violated Hope's Eighth Amendment rights when they punished him by handcuffing him to a hitching post in a restrictive position for seven hours in the hot sun without access to water or bathroom breaks.  536 U.S. at 738.  In addition, *Gates v. Collier* held that chaining inmates to fences or cells or forcing inmates to stand or maintain awkward positions for prolonged periods violated the Eighth Amendment.  501 F.2d at 1306.  In *Hope*, the Supreme Court relied on *Gates*'s reasoning and holding to find that the defendants had fair warning that their actions were unconstitutional.

This Court has also acknowledged that inadequate access to water and toilets can violate an inmate's Eighth Amendment rights if it continues for an extended period.  *See Dellis*, 257 F.3d at 512 (limited access to water over a three day period) (citing *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (inedible food and inadequate drinking water for four days, and no access to the toilet overnight)).  Furthermore, our sister circuits have found shorter deprivations to violate the Constitution when they lack a penological purpose.  *See Ort v. White*, 813 F.2d 318, 325-26 (11th Cir. 1987) (reasoning that denying a *nonresistant* inmate water over a short period would violate the Eighth Amendment because the denial would be without justification), *relied upon in Hope*, 536 U.S. at 743; *cf. Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) ("Among unnecessary and wanton inflictions of pain are those that are totally without penological justification." (internal quotation marks omitted)).

Defendants attempt to distinguish *Hope* because Barker was not tied to a hitching post, and *Ort* and *Gates* because they are from other circuits.  We are not persuaded.  As noted above, the Supreme Court has established that a wide variety of sources, even those that are not authoritative, can provide defendants with fair warning.  Although *Ort* and *Gates* come from the Eleventh and Fifth Circuits, respectively, and so are not binding on this Court, neither are they "single idiosyncratic opinions" from other circuits.  *Compare Davis v. Holly*, 835 F.2d 1175, 1182 (6th Cir. 1987) ("A single

idiosyncratic opinion from the court of appeals for another circuit was hardly sufficient to put the defendants on notice of where this circuit or the Supreme Court might come out on the issue in question"), *with Pearson*, 555 U.S. at 244-45 (finding a doctrine clearly established based on precedent from other circuits). Moreover, these cases were thoroughly analyzed and served as the basis for the Supreme Court's decision in *Hope*—a decision that is certainly binding on this Court. *See Hope*, 536 U.S. at 742-44. They are thus sufficient to give the Defendants fair warning.

A defendant's deviation from normal practice and prison policies can also provide notice that his actions are improper. *See id.* at 744-45. In this case, the evidence establishes that normal procedure would have been to change Barker's clothing and remove his handcuffs before placing him in the observation cell, thus allowing him full use of his hands to rest comfortably and access the water fountain and toilet. Defendants argue that they deviated from this practice because Barker was resisting the removal of his handcuffs. However, for the purposes of qualified immunity, this Court must take the plaintiff's evidence as true. *See Anderson*, 477 U.S. at 255. Thus, the fact that Defendants deviated from normal procedure, even though Barker was cooperating and removal of the handcuffs would have been simple, provides further evidence that Defendants knew their conduct was unconstitutional.

Furthermore, *Hope* makes clear that the obvious cruelty inherent in a punishment can serve as notice that it is unconstitutional. *Id.* at 745. As the Supreme Court reasoned:

> Hope was treated in a way antithetical to human dignity—he was hitched to a post for an extended period of time in a position that was painful, and under circumstances that were both degrading and dangerous. This wanton treatment was not done out of necessity, but as punishment for prior conduct.

*Id.* The situation at hand was no different. Taking Barker's evidence as true, he was handcuffed in an uncomfortable position for over twelve hours for no legitimate purpose, and denied even the basic dignity of relieving himself. The obvious cruelty in Defendants' actions warned them that they were violating the prohibition against cruel

and unusual punishment.  Accordingly, the constitutional right was clearly established and we **REVERSE** the district court's grant of qualified immunity to all Defendants.

### III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is **AFFIRMED** as to Defendants Goodrich, Adams, Alston, Casey, Foster, Frye, Gause, Hampton, Harrington, Rodgers, and Timmerman-Cooper in their official capacities on the § 1983 claims for monetary relief and **REVERSED** as to all other claims, and the case is **REMANDED** for further proceedings consistent with this opinion.