NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0293n.06

No. 10-6488

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 14, 2012*

LEONARD GREEN, Clerk

DIXIE M. WEBB,                                    )
                                                 )
        Plaintiff-Appellant,                     )        ON APPEAL FROM THE
                                                 )        UNITED STATES DISTRICT
v.                                               )        COURT FOR THE EASTERN
                                                 )        DISTRICT OF KENTUCKY
KENTUCKY STATE UNIVERSITY;                       )
BETTY OLINGER; CHARLES                           )
BENNETT; JAMES CHAPMAN, in                       )
their individual capacity; MARY SIAS,            )
in her individual capacity as president          )
of Kentucky State University,                    )
                                                 )
        Defendants-Appellees.                    )

BEFORE:     MARTIN, SUTTON, and BALDOCK,[*] Circuit Judges.

BALDOCK, Circuit Judge.    This appeal arises from Kentucky State University

(KSU) denying Plaintiff tenure and its subsequent decision not to renew Plaintiff's contract

as an assistant professor in the Nursing Department.  Plaintiff asserted a federal civil rights

claim against KSU and several of its employees pursuant to 42 U.S.C. § 1983, contending

KSU denied her tenure without adequate procedural safeguards in violation of the Due

Process Clause of the Fourteenth Amendment.  Plaintiff additionally alleged Defendants

retaliated against her in violation of the First Amendment for hiring an attorney to inquire

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge, Tenth Circuit, sitting
by designation.

as to her request for due process. Plaintiff also brought state law claims for breach of contract and age discrimination. The defendants filed a motion for summary judgment on all Plaintiff's claims. The district court granted the motion, and Plaintiff appealed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

The record before us indicates that KSU placed Plaintiff in the tenure track position of assistant professor of nursing on September 10, 2002 in a tenure track position. Tenure track contracts at KSU do not exceed one academic year and automatically terminate upon the expiration of that period. KSU faculty who work pursuant to a tenure track contract are placed on a probationary status for a period not to exceed six years. Plaintiff took a leave of absence in 2006 and returned to her teaching position in April 2007. Because of the one year leave of absence, Plaintiff believed she would have an additional year to complete her tenure application. But the University declined to grant Plaintiff the extension. Plaintiff therefore speedily assembled an application and officially applied for tenure on October 3, 2007, during her sixth year at KSU. At the beginning of the process, Defendant Betty Olinger, Chair of the Department of Nursing, consistent with KSU policy, informed Plaintiff if she did not obtain tenure, Plaintiff would have one additional year of employment at KSU. A preliminary committee consisting of Defendant Charles Bennett, Dean of College of Mathematics, Science, Technology and Health, Defendant Olinger, and Defendant Bonnie Quarles, Chair, Tenure and Promotion Committee, unanimously approved Plaintiff's tenure application. Subsequently, however, the University Tenure and

Promotion Committee recommended to Defendant James Chapman, Provost, that Plaintiff's tenure application be denied based on Plaintiff's lack of scholarship and service. Defendant Chapman then notified Defendant Mary Sias, President, of the committee's decision and that he concurred in the recommendation. On January 29, 2008, Defendant Sias wrote Plaintiff to inform her of the recommendation against tenure. The letter did not contain reasons for the denial.

The KSU Faculty Handbook & Staff Personnel Policy & Procedures Manual (Faculty Handbook) provides an appeals process for a faculty member who has been denied tenure. The faculty member must appeal to the President of the University for a hearing before the University Faculty Appeals Committee no later than 30 calendar days after receipt of the notice of denial of tenure. KSU notified Plaintiff of her denial of tenure on January 29, 2008. Plaintiff did not know the specific reasons why KSU denied her tenure until the last day of her 30 day appeal period. Later, in March or April of 2008, Plaintiff received a copy of the Committee on Tenure and Promotion Report, which detailed the reasons KSU denied Plaintiff tenure. On May 6, 2008, Plaintiff received an additional one-year contract. The contract stated it would automatically terminate at the end of the academic year and it would not be renewed. On May 13, 2008, Plaintiff sent the president and others an email stating: "I would like to protest my tenure declanation [sic] on the failure to grant me due process and the failure of the committee to evaluate me on the nursing benchmarks." She additionally stated why she believed the committee had not properly evaluated her

application for tenure. The next day, on May 14, 2008, Plaintiff signed the one-year contract.

Plaintiff then worked the 2008–09 school year, which ended on May 11, 2009. Plaintiff attempted to obtain an additional one-year contract. Defendants Olinger and Bennett supported her efforts. But Defendant Sias did not recommend her for employment. Defendant Bennett then received a letter from Plaintiff's counsel on May 27, 2009, which stated Plaintiff had retained him "to assist her with an appeal of the denial of her application for tenure." Because Plaintiff no longer worked for KSU on May 27, 2009, KSU did not respond to the letter. In addition, during the 2008–09 school year, Plaintiff contends she saw a contract for an additional year on Defendant Chapman's desk and, moreover, Defendant Olinger represented Plaintiff would return as a faculty member the next school year.

Plaintiff then filed the present civil action in a Kentucky state court, asserting three counts against Defendants. Plaintiff contended: (1) Defendants' decision to deny her tenure violated her procedural due process rights in violation of the Fourteenth Amendment;[1] (2) Defendants' decision to not renew her contract and to replace her with a younger employee discriminated against her because of her age in violation of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.040; and (3) Defendant's decision not to offer her an

---

[1] Within Count 1, which alleges violation of due process, Plaintiff asserts a state law breach of contract claim and detrimental reliance claim, which we will discuss in greater detail below.

additional contract was retaliatory because she hired an attorney to challenge KSU's tenure decision in violation of the First Amendment.

After removing the action to federal court, Defendants filed a motion for summary judgment. The district court granted Defendants' motion for summary judgment while the parties engaged in mediation. Relevant to this appeal, the court concluded KSU was entitled to absolute immunity pursuant to the Eleventh Amendment and the individual Defendants were likewise entitled to absolute immunity for monetary damages to the extent they were sued in their official capacities.

The district court next stated the individual defendants were all entitled to qualified immunity to the extent they were sued in their individual capacities because the individual defendants were performing a discretionary function in determining whether Plaintiff qualified for tenure. The district court in making this holding relied on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The court believed Defendants Chapman's and Sias's actions in implementing the tenure committee's recommendation were administrative in nature and no Defendants' actions were taken in violation of any clearly established statutory or constitutional rights of Plaintiff. Out of an abundance of caution, the district court next addressed qualified immunity as to Defendant Sias in her official capacity to determine whether Plaintiff asserted a cognizable claim for injunctive relief.[2] The district

---

[2] The district court addressed Plaintiff's Complaint as if she asserted claims against Defendant Sias in both her individual and official capacities. The district court addressed both scenarios because Plaintiff captioned her Complaint against "DR. MARY SIAS, in her

continue...

court granted Sias qualified immunity, dismissing Plaintiff's procedural due process claim for failure to avail herself of the available administrative remedies in a timely manner.[3] The court also dismissed Plaintiff's state law age discrimination claim. It held Plaintiff had not sufficiently established a prima facie claim of age discrimination because Plaintiff neither alleged nor offered proof that the person who allegedly replaced her was offered a tenured or non-tenured position. The district court further stated that even if Plaintiff had established a prima facie case, Defendants' demonstration of a good faith basis for not offering her a tenured position rebutted Plaintiff's claim. The district court also dismissed Plaintiff's retaliation claim because it believed KSU took no adverse employment action against her. Finally, the court held Plaintiff did not provide the court with sufficient evidence to support a claim of detrimental reliance or apparent authority for a one-year oral contract because Plaintiff knew Defendant Olinger could not offer her employment.

II.

On appeal, Plaintiff continues to maintain she had a procedural due process right in her application for tenure. She asserts that, although the district court correctly held KSU enjoys immunity, the court erred in extending qualified immunity to the individual defendants. Plaintiff posits the individual defendants' refusal to follow their own

---

[2]...continue
individual capacity as president of Kentucky State University."

[3] The district court additionally addressed substantive due process rights. However, the parties have not raised substantive due process on appeal.

procedures denies those defendants the right to assert qualified immunity. Next, Plaintiff asserts the district court erred in analyzing her retaliation claim. Plaintiff states her decision to contact an attorney was a factor in KSU's determination not to rehire Plaintiff and, moreover, that statements made by some defendants "create[] a question of fact as to whether she was a victim of retaliation." In addition to those federal claims, Plaintiff also alleges error as to her state law claims of age discrimination, breach of contract and detrimental reliance. Plaintiff first contends the district court erred in its analysis of her age discrimination claim. She believes she asserted a prima facie case and Defendants' stated business justification for her termination is merely pretextual. As to her breach of contract and detrimental reliance claim, Plaintiff maintains the district court ignored the law of detrimental reliance and apparent authority when it granted Defendants' motion for summary judgment. Plaintiff suggests her conversations with Defendant Olinger, emails from the department chair and provost, and "the fact that she saw her contract in the Dean's office" support her contract claim. Finally, Plaintiff asserts the district court abused its discretion and "made a mockery of the mediation process" when the court granted summary judgment while the parties were engaging in mediation.

Defendants, on the other hand, believe we do not need to reach the merits of Plaintiff's federal claims. For the first time, Defendants argue Plaintiff's federal claims are time barred and should be dismissed for failure to bring the actions within the applicable statute of limitations. Defendants alternatively suggest KSU policy and regulations provided Plaintiff with the opportunity to be heard, but Plaintiff neglected to

take advantage of those procedures. Specifically, Defendants assert Plaintiff knew the rights in the Faculty Handbook and knew the reasons for denial of tenure during the time for appeal, yet she declined to exercise her right to appeal within the appealable time period. Thus, Defendants assert the district court correctly determined they are entitled to qualified immunity in their individual capacities because they were performing discretionary functions and did not violate Plaintiff's constitutional rights. Next, Defendants contend they did not retaliate against Plaintiff for contacting an attorney because Defendants did not receive the letter from Plaintiff's counsel until after her 2008–09 one-year contract had ended. Defendants further maintain even if Plaintiff could make out a prima facie case for age discrimination, the district court correctly held KSU had a good faith reason for not renewing Plaintiff's contract. As to the contract claim, Defendants posit Plaintiff cannot recover based on promissory estoppel because no one with contract authority promised or recommended a contract. Finally, Defendants contend that because Plaintiff did not raise the mediation issue in the district court, it is not properly before us on appeal.

We first address Defendant's assertion that Plaintiff's federal claims are time barred. We then turn to Plaintiff's appeal of the district court's determination to grant qualified immunity on Plaintiff's procedural due process claim before addressing Plaintiff's retaliation, age discrimination and contract claims. Finally, we address whether the district court abused its discretion in granting Defendants' motion for summary judgment while the parties engaged in mediation.

III.

Before turning to the merits of the appeal, we first must address Defendants' contention that Plaintiff's federal claims are time-barred. The applicable statute of limitations for a § 1983 action arising in Kentucky is one year. *Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009). KSU notified Plaintiff of her denial of tenure on January 29, 2008. More than one year later, on October 22, 2009, Plaintiff filed the present civil action. Defendants failed to plead this affirmative defense in their Answer and now ask us to allow them to amend their Answer to assert the statute of limitations bar pursuant to Federal Rule of Civil Procedure (Rule) 15(b).

Rule 15(b) contemplates amendments during and after trial. This rule provides that the district court may allow amendment of the pleadings if, at trial, "a party objects that evidence is not within the issues raised in the pleadings." Fed. R. Civ. P. 15(b)(1). The rule also permits amendment of pleadings where "an issue not raised by the pleadings is tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2). Rule 15(b) plainly does not permit a party who neglects to raise an affirmative defense to the district court to raise that defense belatedly on appeal. Rather, case law in this Circuit is clear that "[w]e do not consider an argument raised for the first time on appeal unless the party shows that refusal to consider the argument would result in a miscarriage of justice." *Perez v. Oakland Cnty.*, 466 F.3d 416, 430 (6th Cir. 2006). In this case, Defendants acknowledge they simply failed to realize the statute of limitations had passed. Our refusal to consider

this argument on appeal does not result in a miscarriage of justice as Defendants could have raised the issue to the district court, but failed to do so.

IV.

Having determined Defendants cannot amend their answer to assert the statute of limitations bar, we now turn to the merits of Plaintiff's appeal, beginning with qualified immunity. "The district court decided most of the issues now on appeal at summary judgment; this court reviews those decisions *de novo*." *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 972 (6th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818) (internal quotation marks omitted). Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). The plaintiff must show: (1) "a violation of a constitutional right," and (2) "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id*. (citing *Pearson*, 555 U.S. at 232).

In this case, Defendants asserted the doctrine of qualified immunity by stating in their Answer: "The individual defendants are entitled to the defense of qualified

immunity." Although Defendants' generic assertion of qualified immunity would have been enough to assert the defense as to the First Amendment retaliation claim, before the district court, Defendants only argued qualified immunity as to the procedural due process claim. Additionally, on appeal, Defendants fail to argue the district court should have analyzed whether they were entitled to qualified immunity on the retaliation claim. Therefore, on appeal, we will consider whether Defendants are entitled to qualified immunity only as to the procedural due process claim because Defendants waived the affirmative defense as to the retaliation claim.

The Supreme Court has granted us the latitude to address the two-part qualified immunity test in any order we choose. *Pearson*, 555 U.S. at 236. We begin with whether Defendants violated Plaintiff's procedural due process rights. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). We have acknowledged that a university "professor who is eligible for tenure consideration has some minimal property interest in a fair tenure review process." *Purisch v. Tenn. Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996). When a protected interest is implicated, "the right to some kind of prior hearing is paramount." Roth, 408 U.S. at 569–70. KSU's Faculty Handbook provides that "[a]ll faculty who receive a tenure contract are placed on a probationary status for a period not to exceed six years." The Faculty Handbook also clearly informs all potential tenure candidates in Section 2.7.3 that "the person's entire professional contributions" will be

reviewed, including "educational background, previous academic and professional experience, teaching and advising activities, scholarly contributions, and service activities." Because KSU has "clearly promulgated rules and fostered mutual understandings regarding entitlement to a merit-based tenure review . . . the university may not deny a candidate tenure without some degree of impartial inquiry into his or her qualifications." *Purisch*, 76 F.3d at 1423 (internal citations omitted).

KSU had the following procedures in place for an applicant who is denied tenure. Section 2.7.5 of the Faculty Handbook states that "[t]he President will notify applicants and the appropriate administrators in writing no later than February 1 of what he or she intends to recommend to the Board." Section 2.7.6 does not require the university to give a detailed list of reasons for denial of tenure. Instead, it allows for an appeal to the President for a hearing before the University Faculty Appeals Committee. The section further provides that the appeal "shall be made by the faculty member no later than thirty (30) calendar days after receipt of official notice of denial of tenure and/or promotion." The faculty member is to request her review in writing and set forth the basis for the review. After receiving that request, the President is to submit the request to the University Faculty Appeals Committee within ten working days. The university must then conduct a hearing within 90 days. Section 2.7.6 further guarantees due process to the appealing faculty member. This process includes "the right to appear before the committee, the right to counsel, the right to call witnesses in his or her behalf, the right to cross-examine

witnesses, and the right to present evidence in his or her behalf relative to the basis of the appeal."

The Faculty Handbook provided Plaintiff a clear course to exercise her due process right to be heard. But Plaintiff chose not to exercise her right to appeal within the time frame set forth in the Faculty Handbook. Plaintiff now argues the individual defendants violated university procedures by not providing a detailed list of reasons why the university denied Plaintiff tenure. Plaintiff points our attention to Section 2.7.6 of the Faculty Handbook, which we discussed above. She states "[i]t is clear from the wording of the Faculty Handbook that the President was to provide to the Appellant specific reasons as [to] why she was denied tenure." Plaintiff further states "[t]he purposes of KSU's Faculty Handbook, Section 2.7.6 is to require the President to give detailed reasons for the denial of tenure so the applicant denied will know what issues to address in 'a meaningful time and in a meaningful manner.'" We disagree. Section 2.7.6 does not require any university official to provide a detailed list of reasons for the denial of tenure. Contrary to Plaintiff's contentions, Defendants did follow the university's procedures. Plaintiff received a letter of decision prior to February 1, in accordance with Section 2.7.5 of the Faculty Handbook. Section 2.7.6 does instruct a candidate denied tenure to set forth in writing the basis of the review. But here, Plaintiff did not initially inquire into the reasons the university denied her tenure application and did not appeal pursuant to the provisions of the Faculty Handbook.

Plaintiff additionally argues she "created a question of fact when she pointed out that the nursing department professors were not held to the same criteria for tenure as the other KSU Faculty." But this argument goes to the merits of Plaintiff's challenge to the denial of tenure that she could have brought before the university appeals committee. Although Plaintiff is correct she had a minimal property interest in a fair tenure review process and the opportunity to be heard, she made the decision not to comply with the university's procedures. Because of Plaintiff's failure to comply with the provisions of the Faculty Handbook regarding her appeal, we hold no defendant violated Plaintiff's constitutional right to due process. Accordingly, we affirm the district court's decision to grant qualified immunity to each individual defendant.

V.

We next examine Plaintiff's contention the district court erred in analyzing her First Amendment retaliation claim. To succeed in a First Amendment retaliation claim, Plaintiff must show:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In her complaint, Plaintiff appears to suggest the First Amendment right exercised is the "right to question her tenure status." She further states the defendants retaliated against her for retaining

counsel. Specifically, in her brief, she notes her decision to contact counsel was a factor in Defendants' decision not to rehire Plaintiff in 2008.

Retaliation claims arise in numerous contexts. *Id*. at 386. "'Protected conduct' in the statutory settings is, clearly, that conduct which the statute defines as protected . . . ." Id. at 387. "Constitutional retaliation cases are similar in that certain provisions of the Constitution define individual rights with which the government generally cannot interfere—actions taken pursuant to those rights are 'protected' by the Constitution." *Id*. The Supreme Court has stated:

> [T]he First Amendment does not create property or tenure rights, and does not guarantee absolute freedom of speech. The First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern. To prevail, an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination.

*Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 675 (1996) (internal citation omitted). Accordingly, "our first inquiry is whether the Constitution protects the plaintiff's conduct." *Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir. 1997). "The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment." *Eckerman v. Tenn. Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010); *see also Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) (stating the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition") (quoting *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000)); *and DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The

right to retain and consult with an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech.").

Even though Plaintiff has demonstrated she engaged in protected conduct, she cannot show Defendants took an adverse action causing Plaintiff "to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Paige v. Coyner*, 614 F.3d 273, 281 (6th Cir. 2010) (internal quotation marks omitted). Plaintiff's complaint states the alleged adverse action was in retaliation "against the Plaintiff for exercising her right to question her tenure status." When Plaintiff's attorney wrote to Defendant Bennett on May 27, 2009, the time to appeal the denial of tenure had expired over one year earlier. Although not clear, if the adverse action was Defendants' decision not to renew Plaintiff's contract for the 2008–09 school year rather than the denial of tenure, Plaintiff's retaliation claim still fails. Plaintiff's one-year contract expired on May 11, 2009. Plaintiff argues that proof of an adverse action exists in an email Defendant Bennett forwarded to Plaintiff. The email from Bennett, dated July 22, 2009, written to "Betty," presumably Defendant Olinger, states: "[The provost] said that we will be able to hire Dixie . . . for 2009–2010 and only for that year . . . . I don't know if Dixie's potential suit will cause him to change his mind—I don't think so. Maybe Dixie will change hers." At no time had the university offered Plaintiff a contract for the 2009–10 school year. As previously stated, Plaintiff signed the one-year contract which stated it would automatically terminate at the end of the academic year and *it would not be renewed*. When Plaintiff's counsel sent the letter to Defendant Bennett, she no longer worked for the university and,

even if she had seen a draft contract sitting on a desk, she had not signed a new contract for the upcoming academic year. Because Plaintiff's contract had not been renewed prior to the university's receipt of the letter, the university took no adverse action which would deter a person from hiring an attorney in the future. Accordingly, we affirm the district court's decision that Plaintiff's retaliation claim lacks merit.

VI.

Having determined Plaintiff's federal claims lack merit, we now address her state law claims. Plaintiff filed her age discrimination claim pursuant to the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.040. We analyze Plaintiff's KCRA claim in the same manner as a federal age discrimination claim. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008) (citing *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984)). "A plaintiff who brings an age-discrimination claim based on a disparate-treatment theory must prove that age was a determining factor in the adverse employment action that the employer took against him." *Allen*, 545 F.3d at 394 (internal quotation marks omitted). Where, as here, "a claim of age discrimination is based largely on circumstantial evidence, we analyze the claim under the three-step *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792 (1973)] framework." *Id*. To establish a prima facie case of age discrimination, Plaintiff must prove she: "(1) was a member of a protected class of persons (i.e., persons 40 years of age or over), (2) was discharged, (3) was qualified for the position held, and (4) was replaced by someone outside the protected class." *Id*. After a plaintiff establishes a prima facie case, "the burden of production shifts to the employer to

articulate a legitimate nondiscriminatory reason for the adverse employment action." Id. (internal quotation marks omitted). If the defendant meets that burden, "the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Id*. (internal quotation marks omitted).

The district court determined Plaintiff did not state a prima facie case because she has neither alleged nor offered proof that the person who allegedly replaced her was offered a tenured or non-tenured position. We agree. But even assuming Plaintiff could establish a prima facie case, we further agree with the district court Plaintiff has not rebutted Defendants' legitimate reason for denial of tenure. We addressed a denial of tenure with a similar set of facts in another unpublished decision of this Court. In *Staton v. Miami Univ.*, 1998 WL 228171, *2 (6th Cir. May 1, 1998), Plaintiff argued age discrimination when Miami University denied his tenure application. The university stated that the denial of tenure resulted from Staton's insufficient scholarly publications. *Id*. Just like the plaintiff in *Staton*, Plaintiff here has "failed to rebut this reason either directly, by showing a discriminatory motivation, or indirectly, by showing that the proffered explanation was unworthy of credence." *Id*. Plaintiff cannot "cast doubt on the documented questions regarding [her] research and publication." *Id*. But unlike *Staton*, the tenure committee in this case also denied Plaintiff's application for lack of service to the university community.

Plaintiff, however, contends on appeal the legitimate reason proffered was mere pretext. We have described three ways a Plaintiff can show pretext: "by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Allen*, 545 F.3d at 396. Here, Plaintiff has failed to show any of the three. In her deposition, Plaintiff admitted to having performed no research while employed at KSU. The Faculty Handbook clearly states in Section 2.7.3.1.1 that a candidate for tenure should have a section on "Scholarly and Creative activity" as well as "Service" in her dossier.

Because Defendant provided a legitimate reason for not providing Plaintiff with tenure and because Plaintiff has failed to show the legitimate reason was pretextual, we hold Defendants did not discriminate against Plaintiff based on her age.

VII.

We now turn to the state law contract claim. As discussed above, the contract claim is not a separate count in the Complaint. Instead, Plaintiff inserted the claim into her due process count. The claim consists of three sentences: (1) "The Plaintiff relied on the Defendant's representation that she would be employed by the Defendant for the academic year 2009–2010 to her detriment"; (2) "The Defendant [sic] breached their contract with the Plaintiff for employment"; and (3) "As a result of the breach the Plaintiff has been economically harmed." Plaintiff argues "detrimental reliance" and "apparent authority" in

addition to breach of contract in her brief. We will first address breach of contract before turning to "apparent authority" and "detrimental reliance."

A.

Kentucky law provides that on the recommendation of the president of a university, the board of regents of that university shall appoint all faculty members and fix their compensation and tenure of service. Ky. Rev. Stat. § 164.360. Additionally, Kentucky has waived its sovereign immunity for *written* contracts only. Ky. Rev. Stat. § 45A.245(1). On appeal, Plaintiff acknowledges the President of KSU is the only person who can offer contracts for employment. Because the President of KSU was the only person capable of recommending to the board that Plaintiff receive a contract and a written contract was never presented to or signed by Plaintiff for the 2009–10 academic year, the Plaintiff's breach of contract claim fails.

B.

Plaintiff next asserts the district court erred in its application of apparent agency. In Kentucky, "[a]n apparent . . . agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985) (quoting *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934)) (internal quotation marks omitted).

Plaintiff concedes in her brief that only the President of the University could award contracts. But, she argues Defendants Olinger and Bennett "presented that they had the

apparent authority to extend the year contract." Plaintiff contends she relied on that authority. But at her deposition, Plaintiff was asked, "[w]ere you familiar with the Kentucky law about tenure that said you had to have a recommendation from the President to the Board of Regents and approval by the Board of Regents before you can get tenure?" Plaintiff responded, "I presume. That's what this letter says." She went on to state, "I presumed the chairman of the department had some authority to offer me a position. Obviously, it would have had to have been approved." We take Plaintiff's statements as an acknowledgment she understood that only the Board of Regents, on the recommendation of the President, had the authority to enter into contracts. Therefore, *even if* Defendants Olinger and Bennett held themselves out as agents of the university with authority to enter into contracts, Plaintiff admittedly *knew* those Defendants lacked authority. The Kentucky Supreme Court has stated "manifestations of the principal to the other party to the transaction are interpreted *in the light of what the other party knows or should know instead of what the agent knows or should know.*" *Paintsville Hosp.*, 683 S.W.2d at 257 (emphasis added) (quoting Restatement (Second) of Agency § 49). Because Plaintiff acknowledged she knew from the letter that only the Board of Regents, on the recommendation of the President, could make her an offer of employment, Plaintiff's claim of apparent authority fails.

C.

We now address Plaintiff's "detrimental reliance" assertion. The detrimental reliance argument appears to be a hybrid of a claim for fraud and a claim for promissory

estoppel. Plaintiff argues both principles in her brief when discussing detrimental reliance.

In federal court, fraud must be pled with particularity, which Plaintiff did not do. Fed. R.

Civ. P. 9(b). Therefore, the fraud argument is without merit. Accordingly, we will address

detrimental reliance under the principle of promissory estoppel. Kentucky has adopted the

Restatement (Second) of Contracts definition of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or
> forbearance on the part of the promisee or a third person and which does
> induce such action or forbearance is binding if injustice can be avoided only
> by enforcement of the promise. The remedy granted for breach may be
> limited as justice requires.

*Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009) (internal quotations omitted). Kentucky law

is unsettled on the question of whether the promisee's reliance must be reasonable.

*Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 472 (6th Cir. 2011). Regardless,

"the reasonableness of the promisee's reliance warrants significant consideration in

deciding whether enforcement of a promise is necessary to avoid injustice." *Id*. (internal

quotation marks omitted); *see also* Restatement (Second) of Contracts § 90 cmt. b (1981)

("[E]nforcement must be necessary to avoid injustice. Satisfaction of [this] requirement

may depend on the reasonableness of the promisee's reliance . . . .").

In this case, Plaintiff asserts she relied on conversations with Defendant Olinger, e-

mails from Defendants Olinger and Bennett, as well as the alleged fact she saw a prepared

contract on a desk. Here, even if a promise of employment existed from Defendant Olinger

or Bennett, Plaintiff's reliance on that promise was certainly not reasonable and

enforcement would actually create injustice, rather than avoid injustice. As discussed

above, Plaintiff acknowledged she knew that an offer of employment must come from the Board of Regents rather than from Defendant Olinger or Bennett. Plaintiff had worked for the university for several years and stated in her deposition that she had always had a one-year contract in the past. None of the Defendants performed any action that Plaintiff could reasonably have relied upon to her detriment. Accordingly, Plaintiff's detrimental reliance claim fails.

## VIII.

Having determined the district court made no error of law in granting summary judgment, we now turn to Plaintiff's contention the district court abused its discretion in granting the summary judgment motion while the parties engaged in mediation. As mentioned above, Defendants assert we may not address this argument on appeal because Plaintiff did not raise it to the district court. We disagree because the district court had no opportunity to hear this argument as it *relates* to the district court's decision to grant the motion for summary judgment.

Plaintiff is simply wrong in her argument that a district court's entry of summary judgment while mediation discussions are ongoing "makes a mockery of the mediation process." Summary judgment is appropriate when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A district court may enter summary judgment at *any* time after it receives a summary judgment motion and the above-mentioned standard is met. Plaintiff additionally asserts the proper entry of a summary judgment order granting a motion sabotages the mediation

process. Again, Plaintiff is incorrect. Where, as here, the district court properly granted the summary judgment motion, the mediation process is not "sabotaged." Instead, the district court does not waste judicial resources by preparing for trial where no genuine issue of material fact exists and the opposing party is clearly entitled to judgment as a matter of law. Moreover, we note Plaintiff could have asked the district court to stay the proceedings while the parties engaged in mediation.

For the above stated reasons, this action is—

AFFIRMED.