STRANCH, Circuit Judge,
dissenting.
Following discovery and extensive motion practice, the district court narrowed this case to one claim against two defendants, correctional officers Gary Kott and David LaLonde. I would affirm the district court’s decision to deny qualified immunity to those defendants. Not only are there genuine issues of material fact for trial concerning whether Kott and La-Londe personally violated McNeal’s Eighth Amendment rights, but the law was clear at the time of the alleged events that an officer’s decision to refuse an inmate access to a toilet can result in an Eighth Amendment violation, either because the officer was deliberately indifferent to the prisoner’s serious medical needs, see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), or because the officer engaged in the unnecessary and wanton infliction of pain amounting to cruel and unusual punishment, Hope v. Pelzer, 536 U.S. 730, 741-42, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Prison officials “had fair warning ... that their conduct was unconstitutional” because case law established before 2007 that restraining an inmate in his cell without access to a toilet or water “could rise to an Eighth Amendment violation if allowed to persist for an extended period.” Barker v. Goodrich, 649 F.3d 428, 435 (6th Cir.2011).
McNeal was diagnosed with benign prostatic hyperplasia (BPH) (enlarged prostate) by prison medical staff in 2005 after he began serving his term of incarceration in 2003. Since then he has experienced symptoms of the disease, including frequent urination, urgency of urination, inability to empty the bladder, and bladder pain. Each morning around 11 a.m., McNeal was confined to his cell in Unit E-3 without access to a toilet while the prison conducted a formal inmate count, a process lasting between thirty and fifty minutes. McNeal used the restroom before count began, but at times was not able to hold his urine for the period of time necessary to complete count. Written prison policy permitted correctional officers to allow inmates out of their cells during count to use restroom facilities.
Despite this policy, Officer Kott refused to exercise his discretion to allow McNeal to use the restroom either during the formal inmate count or the remaining part of the count period during which certain prisoners, porters, are allowed to move freely about the prison. Kott determined, in his own opinion, that McNeal did not have a medical condition that presented a genuine, urgent need to use the restroom. He claimed' that McNeal never “appearfed] anxious or in pain, buckled over, or holding himself.”
On March 23, 2009, during a count period lasting 46 minutes, Kott rejected McNeal’s requests to use the restroom. Due to intense bladder pain, McNeal went to the restroom without Kott’s permission. When he returned to his cell, Kott said to McNeal, “You shouldn’t have asked me to go. Now you make it easy for me to write you two major misconducts.” Kott issued *573 McNeal three misconduct tickets for being out of place, for disobeying a direct order, and for insolence. McNeal was found guilty of two of the three charges and was confined to • his cell for fourteen days as a sanction. It was only during this time of disciplinary confinement that McNeal was provided a urinal in his cell.
Thereafter Kott refused to allow McNeal to use a restroom during count on two other occasions even after McNeal obtained a medical detail from prison health care staff allowing him to .use the restroom during count with officer permission. McNeal provided the medical detail to Kott immediately after he received it, but Kott replied, “This still states you need my permission to use the bathroom. This means nothing.”
Kott refused to allow McNeal to use a restroom during count even after Assistant Warden Harwood instructed Kott, through his supervisor, LaLonde, “that because of the Medical Detail, prisoner McNeal should probably be afforded an opportunity to use that bathroom within a reasonable amount of time after count had.been taken, if he asks.” Kott ignored Assistant Warden Harwood’s instruction. Instead of requiring Kott to conform to his superior’s direction, LaLonde supported Kott. La-Londe told McNeal that he “fully supported] his officers denying anyone the use of the bathroom, [and] maybe you should get a porter job.” Taking this and other evidence in a light most favorable to McNeal, as the district court correctly recognized we must, a reasonable factfinder could determine that Kott and LaLonde' acted with deliberate indifference to McNeal’s serious medical needs or that' they engaged in unnecessary and wanton infliction of pain for the very purpose of causing McNeal harm.
The majority insists that the fault lies with McNeal because he “refused” incontinence pads. The record presents a different picture. On March 26, McNeal sent a kite to Health Services requesting a medical detail for extended bathroom access. The next day, Health Services responded: “[T]his is a custody issue. Health care can provide incontinence pads, rekite if you would like to try them.” McNeal did not request the incontinence pads, and Dr. Piazza subsequently provided McNeal with a medical detail allowing him to use the bathroom during count with officer permission. After receiving a kite from McNeal, Health Unit Manager Tanya Cunningham wrote to Warden Woods encouraging correctional officers to follow prison policy allowing prisoners to leave their cells to use the restroom once count was completed. A reasonable jury could find on this evidence that McNeal did not “refuse” incontinence pads and that Kott and LaLonde violated McNeal’s clearly established Eighth Amendment rights.
Alternatively, I would affirm the district court’s determination that Kott and La-Londe waived their right to raise qualified immunity. These defendants failed to file a timely objection to the magistrate judge’s denial of qualified immunity early in the case before discovery took place, see Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981), and they also did not file an immediate interlocutory appeal of that first qualified immunity denial. Am and Walters apply to all litigants, not just inmates, and where these defendants did not see fit to challenge the magistrate judge’s denial of qualified immunity or to take an immediate appeal of the district court’s ruling at the first opportunity, the waiver should be enforced.
Accordingly, I respectfully dissent.