RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SHAYNE W. BAILEY,

          *Plaintiff-Appellant,*

   *v.*

          No. 10-3853

CITY OF BROADVIEW HEIGHTS; SAMUEL J. ALAI,

          *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-01096—Patricia A. Gaughan, District Judge.

Argued: January 20, 2012

Decided and Filed: March 19, 2012

Before: BOGGS and GIBBONS, Circuit Judges; and RUSSELL, District Judge.[*]

_____

### COUNSEL

**ARGUED:** David Allan Singleton, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, Thomas Schulman, Cincinnati, Ohio, for Appellant. R. Todd Hunt, WALTER & HAVERFIELD LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Melissa Graham-Hurd, Akron, Ohio, Augustin F. O'Neil, Akron, Ohio, for Appellant. R. Todd Hunt, Morris L. Hawk, Aimee W. Lane, WALTER & HAVERFIELD LLP, Cleveland, Ohio, Vince Ruffa, OAKAR & RUFFA, Broadview Heights, Ohio, for Appellees.

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

————————————

**OPINION**

————————————

BOGGS, Circuit Judge.  Shayne Bailey, the named plaintiff and representative of a 750-member class, brought this suit under 42 U.S.C. § 1983 against the City of Broadview Heights, Ohio, and its mayor, Samuel Alai, in both his personal and official capacity.  He claims that the city and Alai violated his rights under the Due Process Clause when Alai presided over his no-contest traffic-violation case in the city's Mayor's Court.[1]  The United States District Court for the Northern District of Ohio held that Alai did not violate Bailey's due-process rights, relying on non-binding Sixth Circuit precedent stating that entering a judgment of guilty after a plea of no contest is a purely ministerial function that a mayor can undertake without violating due process.  On appeal, Bailey argues that a mayor presiding over a Mayor's Court is per se unconstitutional and that the district court erred in relying on this precedent.  We affirm the judgment of the district court.

I

The facts are not in dispute.  Broadview Heights operates a Mayor's Court as provided for in Ohio Revised Code (O.R.C.) § 1905.01 *et seq*.  Mayor Alai presides over the Mayor's Court pursuant to the city's charter, which states, "The Mayor shall have all the judicial powers granted by the general laws of Ohio to mayors of cities . . . ."

On November 12, 2008, Bailey rear-ended another car.  He received a traffic citation from a police officer for failing to maintain an assured clear distance.  The ticket summoned Bailey to appear in the Broadview Heights Mayor's Court on November 20, 2008.

—————————————

[1]Ohio law gives mayors in cities with populations of more than 100 jurisdiction to "hear and determine any prosecution for the violation of an ordinance of the municipal corporation, to hear and determine any case involving a violation of a vehicle parking or standing ordinance . . . and all criminal causes involving any moving traffic violation occurring on a state highway located within the boundaries of the [city]," subject to certain limitations.  OHIO REV. CODE ANN. § 1905.01(A).

On November 20, 2008, Bailey appeared at the Mayor's Court, unrepresented. Mayor Alai, who was presiding, accepted a voluntary plea of no contest from Bailey. Mayor Alai then entered a finding of guilty and issued a fine of $100, plus court costs of $80.

Bailey left the Mayor's Court without paying his fine or notifying the clerk or anyone in the court. The clerk then signed a criminal complaint against Bailey for contempt of court for failure to appear and summoned him to appear at the court on December 4, 2008.

On December 4, 2008, Bailey appeared at the Mayor's Court a second time. Mayor Alai presided and accepted a voluntary plea of guilty from Bailey on the contempt of court charge. Mayor Alai assessed a fine of $100 and no court costs. Bailey created a payment plan with the court that day and eventually paid the costs of all the citations.

II

On May 12, 2009, Bailey filed this § 1983 class action in district court, alleging violation of his due-process rights. He named as plaintiffs himself and "all other individuals who in two years immediately prior to the filing of this case were Defendants in cases in which adjudication and sentencing occurred in  the City of Broadview Heights Mayor's Court wherein . . . Defendant Samuel J. Alai, Mayor . . . presided." The district court granted Bailey's motion for class certification. Later, the class-certification order was clarified to include only individuals who had pleaded no contest in cases presided over by Mayor Alai.

Bailey claimed that Alai's conduct had been held unconstitutional in *DePiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999). Because Alai acted in contravention of clear and well-established law, Bailey argued, the judgments he entered at the Mayor's Court were void and subject to collateral attack. He requested that the court award compensatory and punitive damages and enter a permanent injunction to prevent Alai from presiding over the Mayor's Court, consistent with the holding in *DePiero*.

In its answer to Bailey's complaint, Broadview Heights argued that Bailey had failed to state a claim on which relief could be granted, denied that *DePiero* was relevant to the case, and asserted immunity for both the city and Alai. Defendants also argued that Alai was entitled to judicial immunity and qualified immunity, because there was no clearly established case law forbidding a mayor from presiding over no-contest pleas.

On April 1, 2010, both parties moved for summary judgment. The district court granted summary judgment for Broadview Heights and denied summary judgment for Bailey. The court agreed with defendants that the case law addressing Ohio Mayor's Courts did not hold that it was unconstitutional for a mayor to preside over a case such as Bailey's. The court first noted that the Supreme Court had declined to hold that the Ohio statute authorizing Mayor's Courts (O.R.C. § 1905.01) was facially unconstitutional. *Tumey v. Ohio*, 273 U.S. 510, 534 (1927). Though some cases had struck down certain instances of a mayor presiding over a Mayor's Court as unconstitutional, the court noted, those all involved *contested* cases in a Mayor's Court. The district court agreed with Broadview Heights that Mayor Alai's actions in Bailey's case—accepting a plea of no contest, entering a judgment of guilty, and assessing a fine and court costs—were ministerial in nature and therefore constitutional. The court relied on an unpublished Sixth Circuit decision that had held it was constitutional for a mayor to preside in a no-contest case in Mayor's Court. *Bailey v. Broadview Heights, Ohio*, 721 F. Supp. 2d 653, 658–59 (N.D. Ohio 2010) (discussing *Micale v. Village of Boston Heights*, No. 95-3284, 1997 WL 225512 (6th Cir. May 1, 1997) (per curiam)).

Having found no due-process violation, the district court declined to deal with the issue of immunity. *Id.* at 663.

Bailey, personally and in his role as class representative, appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment de novo. *DePiero*, 180 F.3d at 776.

III

It is well settled that Ohio's "Mayor's Court Statute," codified at O.R.C. § 1905.01, is facially constitutional. In 1925, the Supreme Court declined to find Mayor's Courts per se unconstitutional. The Court stated, in reasoning that continues to hold today:

> It is, of course, so common to vest the mayor of villages with inferior judicial functions that the mere union of the executive power and the judicial power in him cannot be said to violate due process of law. The minor penalties usually attaching to the ordinances of a village council, or to the misdemeanors in which the mayor may pronounce final judgment without a jury, do not involve any such addition to the revenue of the village as to justify the fear that the mayor would be influenced in his judicial judgment by that fact.

*Tumey*, 273 U.S. at 534. From this language, courts have determined that when a mayor performs ministerial tasks when presiding over a Mayor's Court, such as entering a finding of guilt when a traffic offender pleads guilty or no contest, the Due Process Clause is not violated. Since *Tumey*, the Sixth Circuit has continued to hold Ohio's Mayor's Courts constitutional. *DePiero*, 180 F.3d at 777 ("As the Supreme Court has found no fatal defect in the overarching system that permits a mayor simultaneously to exercise some combination of executive and judicial functions, we affirm . . . for the defendants . . . to the extent plaintiff has challenged the facial validity of Section 1905.01.)"

Though the facial constitutionality of § 1905.01 has been and continues to be upheld, there are limits on the cases that a mayor may constitutionally adjudicate. A mayor presiding over a Mayor's Court violates due process if the situation "would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused . . . ." *Tumey*, 273 U.S. at 532; *see also DePiero*, 180 F.3d at 777; *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972) (applying the same test). *Tumey* used this test in holding that a mayor may not preside over a contested case in which he stands to benefit directly and financially from the

outcome. 273 U.S. at 522–23.  The *Tumey* test has also been interpreted as prohibiting a mayor from presiding over a case when the outcome stands to provide a substantial financial benefit to the city.  *Ward*, 409 U.S. at 59.**2**

The *Tumey* test has been used, most recently, to determine that a mayor violates due process when he presides over a Mayor's Court in a contested traffic case or issues warrants.  *DePiero*, 180 F.3d at 782.  In *DePiero*, on which Bailey relies heavily, DePiero was issued a parking ticket in Macedonia, Ohio.  *Id.* at 774.  A hearing on the citation was scheduled in the Mayor's Court on December 27, 1994.  He failed to appear or pay the ticket.  A second summons was sent to his home, ordering him to appear on January 23, 1995, and stating that if he failed to appear he might be arrested.  *Ibid.*  On February 7, after DePiero failed to appear, the mayor issued a bench warrant for his arrest.  *Id.* at 775.  A criminal-contempt charge was also brought against him.  DePiero was stopped while driving, informed of the warrant against him, and taken into custody. He pleaded not guilty to the traffic and contempt charges against him.  *Ibid.*  His case was tried in Mayor's Court.  At trial, the mayor found DePiero guilty of a misdemeanor parking violation and of the criminal contempt charge.  He was fined $50 and $100 respectively on those charges.

DePiero filed a suit under § 1983 against the city and mayor, alleging that his due-process rights were violated when the mayor presided over his case.  On appeal, the Sixth Circuit reversed the district court's grant of summary judgment for the defendants. We held that in "tr[ying] the *contested* traffic and criminal contempt charges," there was a possibility that the mayor would be tempted to forget the burden of proof necessary to convict DePiero.  *Id.* at 782 (emphasis added).  As "chief conservator of the peace, [who] retained ultimate responsibility for law enforcement and preparation of the city's budget, and [who] appointed the officer who issued [DePiero's] ticket," it was possible that the

---

**2**The amount sufficient to reach a "substantial benefit" has not been quantified. In *Ward*, between one-third and one-half of the village's income was derived from fines and forfeitures from the Mayor's Court. *Ward*, 409 U.S. at 58.  However, in *DePiero* only nine percent of the city's general fund derived from fines from the Mayor's Court. *DePiero*, 180 F.3d at 780.  The court stated that it "saw no need to split hairs over what is a 'substantial' figure" and focused instead on whether the mayor's executive power was so broad that he was precluded from acting as a neutral and detached decision maker. *Ibid.*

mayor would be tempted to "forget the burden of proof and defer to the officer's version of events." *Ibid.*; *see also Ward*, 409 U.S. at 60 (finding a "possible temptation" for a mayor to give undue credence in a contested traffic case to an officer whom he had appointed).

Just as there have been cases delineating what a mayor may not do under *Tumey*, so have there been cases discussing what a mayor *may* do. Some judicial functions appear to be within a mayor's power without violating due process. A mayor presiding over a Mayor's Court does not violate due process when he acts in a purely ministerial capacity. *See Ward*, 409 U.S. at 62 n.2 ("We intimate no view that it would be unconstitutional to permit a mayor . . . to serve in *essentially a ministerial capacity in a traffic or ordinance violation case to accept a free and voluntary plea of guilty or nolo contendre*, a forfeiture of collateral, or the like.") (emphasis added). *Ward* supports, at least in dicta, the idea that it is not unconstitutional for a mayor to serve in a ministerial capacity, even where a mayor may have some conceivable financial interest in the outcome of the case.

Other cases have held, in accordance with *Ward*'s dicta, that a mayor presiding over a Mayor's Court does not violate due process when his function is ministerial. In an unpublished case, this court has held that entering a verdict of guilty and assessing a fine after the defendant has pleaded no contest in a traffic case is a ministerial function. *Micale*, 1997 WL 225512, at *3–4. In *Micale*, Micale was issued a speeding ticket, along with a summons to appear before the Mayor's Court. Micale appeared in Mayor's Court on the day he was summoned and entered a plea of no contest. *Id.* at *1. The mayor then entered a judgment of guilt and imposed a fine and court costs. Micale's co-plaintiff, Kathy Strach, had also been issued a citation for speeding and a summons. She appeared at the Mayor's Court and entered a plea of guilty. *Ibid.*

A panel of the Sixth Circuit affirmed the district court's grant of summary judgment for the city and the mayor. *Id.* at *6. In so holding, the panel agreed with *Ward* that a mayor adjudicating a no-contest plea did not possess an unconstitutional level of discretion or potential bias. The plaintiff in *Micale* argued that the taking of a

no-contest plea was not merely ministerial because the mayor must enter a verdict of guilty or not guilty, and assess a fine, and these are functions entailing discretion. However, the panel pointed out that a no-contest plea under Ohio law is an admission of the truth of the facts alleged in the complaint, *id.* at *4 (citing OH. R. CRIM. P. 11), and that the mayor's function is simply to determine whether the admitted facts do or do not equate to the offense charged. This, the panel deemed, is a "ministerial function which a mayor, even one with a pecuniary interest—may carry out." *Ibid.* The court held that the mayor acted in a ministerial role when he took the plea of no contest, made the finding of guilty, and assessed the fine and court costs.

IV

On appeal, Bailey raises three issues: whether an Ohio mayor is per se prohibited from presiding over a Mayor's Court; whether it was incorrect to hold that a mayor who enters a plea of guilty and exercises any discretion in imposing a fine after a defendant files a no-contest plea acts in a ministerial capacity; and whether *DePiero*, as a published decision, overruled *Micale*. These arguments are addressed in turn.

An Ohio mayor is not prohibited from presiding over a Mayor's Court. All the relevant cases, including *DePiero*, on which Bailey heavily relies, have made it clear that a mayor may perform some judicial functions without violating due-process rights, as long as he does not perform them in a case that would offer a "possible temptation . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused." *Tumey*, 273 U.S. at 532. The Supreme Court has held that Ohio law permitting Mayor's Courts is constitutional. Bailey does not engage these holdings in his brief or try to distinguish them. His argument that Mayor's Courts are per se unconstitutional is meritless.

Bailey next argues that the district court erred when it held that a mayor who enters a plea of guilty and imposes a fine after a defendant files a no-contest plea acts in a ministerial capacity. He argues that *Micale*, on which the district court relied, was incorrectly decided.

Bailey is incorrect. *Micale* was correctly decided. The act of entering a guilty verdict on a no-contest plea in a traffic case is a ministerial act. It does not require the mayor to find facts or weigh evidence. The mayor must only verify whether the facts listed, which have been admitted by the defendant, equate to the offense charged. There is essentially no discretion in such an act of verification. It is not the kind of discretion that would lead to the possibility of temptation to forget the burden of proof or to fail to hold the balance nice, clear, and true between the defendant and the state.

Bailey argues that the district court erred in relying on *Micale* because *Micale* was overruled by *DePiero*. Bailey is incorrect. *DePiero* is clearly different from *Micale*. *DePiero* dealt with mayors presiding over *contested* cases and issuing bench warrants; *Micale* dealt with mayors presiding over no-contest and guilty pleas. A mayor presiding over a case where the plaintiff has pleaded not guilty, as in *DePiero*, has vastly more discretion than a mayor presiding over a no-contest or guilty plea, which were at issue in *Micale*. Thus, it is only logical that the two lines of cases would be governed by different standards. *DePiero* did not overrule *Micale*. Moreover, *Micale* is directly on point in this case, and the district court did not err when it treated it as persuasive authority. Bailey's argument that the court was bound by the holding of *DePiero* is meritless.

V

For the foregoing reasons, we AFFIRM the judgment of the district court.