NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0770n.06

No. 12-3703

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 16, 2013
DEBORAH S. HUNT, Clerk

JACK DRAKE, Individually and as Administrator
of the Estate of Jessica Drake, Deceased,

    Plaintiff-Appellant,

v.

VILLAGE OF JOHNSTOWN, OHIO, *et al.*,

    Defendants-Appellees.

)
)
)
)
)
) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR
) THE SOUTHERN DISTRICT OF
) OHIO
)
)

BEFORE: KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff Jack Drake, a former resident of the Village

of Johnstown, Ohio, brought this action against the Village, its Council, and several Village officials

and employees following his arrest and detention for failure to pay Village income taxes. Drake

challenges the district court's grant of summary judgment to Defendants dismissing his procedural

due process claim, 42 U.S.C. § 1983, and his state-law claim of false arrest. We AFFIRM.

I.

By codified ordinance, Defendant Village of Johnstown (the Village) imposes a 1% income

tax on residents' per-annum earnings and requires that residents file tax returns.[1] Jack Drake and

his late wife, Jessica Drake, lived in a rented house in the Village for two years, until October 2006.

---

[1]Johnstown Codified Ordinances, §§ 191.02, 191.19(a)(8).

The Drakes[2] testified that they first learned of the Village's income tax and tax-return filing requirement in October 2007, when they received by mail a letter entitled "Complaint," together with an Order to Appear in Johnstown's Mayor's Court. The letter stated that the Drakes unlawfully failed to file a tax return for the 2005 tax year on or before April 15 of the following year, contrary to Johnstown Codified Ordinance § 191.17, an unclassified misdemeanor, and that "[t]his crime is commonly known as failure to file a tax return."[3] Defendant John Berryhill, the Mayor's Court Magistrate, signed the Order to Appear.[4] *See* PageID (PID) 787.

The Drakes appeared before Magistrate Berryhill in Mayor's Court, as ordered, on December 13, 2007, and pleaded no contest. Magistrate Berryhill explained to the Drakes that they owed taxes and court costs and that they needed to arrange to file the tax return and set up a payment plan with Tax Director Wilson. The Drakes met with Tax Director Wilson and provided copies of their federal tax returns.[5] Wilson prepared and filed the Drakes' Village tax returns for 2005 and 2006.

Several weeks later, on January 9, 2008, Tax Director Wilson sent the Drakes a "Delinquent Taxes" notice, stating they owed Village taxes, plus penalties interest totaling $220.01 for 2005 and $222.83 for 2006. The notice stated, "If the above is not paid or arrangements made for payment,

---

[2]All references to the Drakes' testimony come from Jessica Drake's deposition. As the district court noted, Jack testified that Jessica got everything right in her deposition and that he had nothing to add. *See* PID 907 n.2.

[3]Defendant Karen Wilson, Tax Director, and Defendant Regina Hunt, Mayor's Court Clerk, signed the letter entitled "Complaint." PID 787.

[4]PID 788.

[5]PID 323-24. Jessica testified that she and Jack always filed separate tax returns. PID 325.

further legal action may be taken."[6] PID 379. Defendants sent the Drakes several more such notices, including in July 2008.

On September 9, 2008, Tax Director Wilson and Court Clerk Hunt signed Complaints against the Drakes for failure to pay their 2005 and 2006 taxes. Magistrate Berryhill signed the accompanying arrest and bench warrants and Court Clerk Hunt signed the summons. PID 811-Jack (Case No. 07-OTH-00072), PID 813-Jessica (Case No. 08-OTH-00223).

The Drakes appeared in Mayor's Court on October 23, 2008, met with Tax Director Wilson, and agreed to pay $25 bi-monthly beginning on November 14, 2008. The Mayor's Court docket sheet reflects that the charge against Jack Drake, "191.200 Tax Violation," was dismissed. PID 822-23 (Case no. 07OTH00104).

It is undisputed that the Drakes made no payments under this payment plan, and that they agreed to at least one other payment plan with Tax Director Wilson, but made no payments.

Over the next few months Johnstown sent the Drakes several letters regarding their outstanding taxes. The Drakes testified that they did not receive these letters but conceded that the letters were correctly addressed.

The Drakes were ordered to appear in Mayor's Court on February 12, 2009, by Notices to Appear dated January 12, 2009. The Drakes testified that they did not receive the Notices to Appear, and the record reflects that those sent by certified mail were returned to Johnstown bearing the stamp

---

[6]PID 379.

"Return to Sender. Unclaimed. Unable to Forward." Court Clerk Hunt testified that it was her practice to send notices to appear via both certified and regular mail.

In any event, the Drakes did not appear as ordered and Magistrate Berryhill signed warrants for their arrest the following day, February 13, 2009. By letter dated the same day, entitled "Warrant Issue Notice," Court Clerk Hunt advised the Drakes that the Mayor's Court "has issued a warrant for your arrest. Therefore, you must now post bond, in person, at the Johnstown Police Dept. Once you have posted your bond, the warrant will be set aside, and you will be given a Court date at which time you must appear before the Court. Total bond is set at $500.00." PID 714 (case No. 09OTH00003).[7] The multi-section form accompanying the Warrant Issue Notice bore Magistrate Berryhill's signatures under the bench warrant and arrest warrant sections and identified the Drakes' transgressions as failing to "appear for Trial/Hearing," and failing to "Obey an Order of the Court." PID 712. Tax Director Wilson and Court Clerk Hunt signed the complaint sections of the forms, and Court Clerk Hunt the summons sections. *Id.*

The Drakes received the Warrant Issue Notices on Saturday, February 14, 2009, during the President's Day holiday weekend. Jessica testified that she called and told the Police Department

---

[7]By separate letters dated February 13, 2009, entitled "Warrant Block Issue Notice," Court Clerk Hunt advised that

> [a] warrant has been/will be issued and a registration block was issued for all vehicles that you own . . . The Bureau of Motor Vehicles was notified on February 13, 2009. After this date you will NOT be able to renew your plates or register another vehicle until the warrant has been released by this Court.

PID 803 (case No. 09OTH00003/Jessica, No. 07OTH00104/Jack). These warrant blocks were cancelled around the time that Magistrate Berryhill released the Drakes from jail on February 19, 2009.

dispatcher that she and Jack did not have $500 a piece for bond, and that the dispatcher told her to call Tax Director Wilson on Tuesday, since Monday was a holiday. On Tuesday, Jessica spoke to Court Clerk Hunt, who told her that Tax Director Wilson would be available on Wednesday, the following day, and that if the Drakes arranged with Wilson to pay the outstanding taxes, she (Hunt) would hold the warrants.

At 9:10 p.m. on Tuesday evening (February 17, 2009) Newark police officers arrested the Drakes at their Newark home and transported them to the Licking County Jail, where they were booked and jailed. On the afternoon of Thursday, February 19, 2009, a Johnstown police officer transported Jessica from the county jail to the Johnstown Police Department, where Magistrate Berryhill met with her in a room. Magistrate Berryhill testified that he considered this meeting a "bond hearing," and admitted saying to Jessica that the Village was tired of the Drakes "dicking around." PID 451-52. Jessica testified that Berryhill also said that the "next time" he would jail the Drakes for a month. Berryhill denied saying this.

After the meeting, Berryhill issued identical orders for Jack and Jessica, which stated:

> This matter came on for consideration by the Magistrate and it is ordered that the Deft. be released on the execution of a $5,000 own recognizance bond. Deft. is to either schedule an appointment with Ms. Wilson or if not possible appear in Mayor's Court on February 26, 2009 at 6:30 p.m.

PID 808-09. Jessica was transported back to the county jail, and both she and Jack were released.

The Drakes received several subsequent notices from Tax Director Wilson regarding their outstanding taxes but were not ordered to appear in Mayor's Court again. Jessica testified that she paid the outstanding income taxes to a collection agency in early 2010, after she was approved for

disability benefits and received a sum retroactive to 2008. By the time Jessica paid off the outstanding taxes, Johnstown had abandoned the practice of collecting taxes through the Mayor's Court and turned it over to an outside agency.

The Drakes filed suit against Magistrate Berryhill, Court Clerk Hunt, Tax Director Wilson, Johnstown Mayor Kevin Riffe, the Village Council, and the Village, asserting violations of due process and equal protection, conspiracy, and false arrest, and seeking prospective and injunctive relief.

## II.

The State of Ohio "gives mayors in cities with populations of more than 100 jurisdiction to 'hear and determine any prosecution for the violation of an ordinance of the municipal corporation'," provided that certain requirements not at issue here are met. *Bailey v. City of Broadview Heights*, 674 F.3d 499, 501 n.1 (6th Cir. 2012) (quoting Ohio Rev. Code § 1905.01); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). There is no dispute that the Village is authorized to convene a Mayor's Court to preside over prosecutions for violations of a municipal ordinance. Ohio Rev. Code 1905.01; *DePiero*, 180 F.3d at 776. Mayor Kevin Riffe appointed Defendant John Berryhill as magistrate of the Village's Mayor's Court, as authorized by statute. Ohio Rev. Code § 1905.05(A); *see also* Johnstown, Ohio, Codified Ordinance § 171.03 ("[t]he Mayor shall appoint a qualified magistrate to conduct Mayor's Court.")

Johnstown Codified Ordinance § 191.16, entitled "Failure to File Return or Pay Tax; Assessments; Notice," provides in pertinent part:

(a)  []  If any taxpayer fails to file a return or fails to pay the tax imposed by Section 191.02 of this chapter, the taxpayer is personally liable for the amount of the tax.
(b)  If any . . . taxpayer required to file a return . . . fails to file the return within the time prescribed . . . , fails to remit the full amount of the taxes due for the period covered by the return . . . the Tax Director may make an assessment against any person liable for any deficiency for the period for which the return is or taxes are due, based upon any information in the administrator's possession.
(c)  Such assessment shall be served upon the . . . taxpayer . . . in person or by mailing to the last known address of such taxpayer . . .  Proof of mailing such proposed assessment shall be presumptive proof of receipt thereof by the addressee.

Ordinance § 191.19, entitled "Penalties for Failure to File, Failure to Pay," provides:

(a) In addition to any other penalty imposed by this chapter, the following penalties shall apply:
    (1)  All taxes imposed by this chapter and remaining unpaid after they become due shall accrue interest at the rate of two percent (2%) per month on the principal unpaid balance.  Such interest shall accrue on the unpaid balance of all tax which was due from the date if the tax had been time [sic] filed and paid.

    (2)  The penalty for non-filing or late filing of a return required to be filed and paid, for which an extension of time was not timely sought and obtained, shall be ten percent (10%) of the amount of the principal tax or twenty-five dollars ($25.00) whichever is greater and will be due with the filed return.
. . . .
    (8) Any taxpayer who shall fail, neglect or refuse to pay the tax, interest and penalties imposed by this chapter **shall be guilty of a misdemeanor** and shall be fined not more than one hundred dollars ($100.00) for the first offense . . . .
. . . .
If the violation of this section is **willful and intentional** a jail term may also be imposed with the fine as follows:
        A.  First offense        30 days (max.)
. . . .

(Emphasis added).  As Tax Director, Defendant Karen Wilson administered the Department of

Taxation and was authorized

to arrange for the payment of unpaid taxes, interest, and penalties on a schedule of installment payments, when the taxpayer has proved to the Tax Director that, due to certain hardship conditions, he is unable to pay the full amount of the tax due.  Such

authorization shall not be granted until proper returns are filed by the taxpayer for all amounts owed by him under this chapter.

Johnstown Codified Ordinance § 191.03(f).[8]

**A.**

Magistrate Berryhill testified that he has served as Johnstown's Mayor's Court magistrate, a part-time position, for between 7 and 10 years, and serves as magistrate for a number of other towns as well. For the last 15 years, his full-time employment has been as magistrate judge in the Domestic Relations Court of Licking County. Berryhill testified that he signed the Drakes' arrest warrants in February 2009 because they had failed to pay outstanding taxes and failed to appear in court as ordered. He also testified that he signed the arrest warrants believing that valid complaints had been filed against the Drakes and that they had been properly served.

On advice of counsel, Magistrate Berryhill did not answer certain questions at deposition—those that went to why he did certain things relative to the Drakes' cases. The Drakes moved to compel Berryhill to answer "why" questions, and the magistrate judge ruled that Berryhill should not be compelled to testify to the thought processes underlying his judicial decisions.

---

[8]Johnstown Codified Ordinance section 191.04, entitled "Investigative Powers of Tax Director," authorizes the Tax Director "to examine the books, papers, records, and federal income tax returns of . . . any taxpayer . . . for the purposes of verifying the accuracy of any return made, or, if no return was made, to ascertain the tax due under this chapter." Ordinance § 191.18 authorizes the Tax Director to institute civil suit to collect delinquent taxes:

**191.18 COLLECTION OF UNPAID TAXES**
All taxes imposed by this chapter shall be collectable, together with any interest and penalties thereon, by suit, as other debts of like amount are recoverable. The Tax Director is authorized, in addition to other duties, to institute civil lawsuits to collect delinquent taxes due and owing the Municipality . . . .

Several months later, when Defendants moved for summary judgment, they appended to their

motion an affidavit from Berryhill that attested:

> 7. I made a finding of probable cause that [the Drakes] failed to appear in Mayor's Court on February 12, 2009.
> 8. I made a finding of probable cause that [the Drakes] were in violation of the Ordinances of Johnstown, Ohio with respect to their failure to pay their Village income taxes.
> 9. On February 12, 2009, pursuant to my findings of probable cause, I issued a warrant for the arrest of [the Drakes.] See Exhibits M and N.
> 10. [The Drakes] were brought before me within 48 hours of their arrest for a bond hearing.
> 11. At the bond hearing, I released both Jessica Drake and Jack Drake on their own recognizance. See Exhibits T and U.
> 12. The decision to issue a warrant for the arrest of [the Drakes] was made solely by me.
> 13. The decision to release [the Drakes] on their own recognizance was made solely by me.[9]

## Mayor's Court "Diversion Program"

Magistrate Berryhill testified that, rather than take to trial residents who pleaded not guilty

to charges of failure to file returns or pay Village income taxes, the Mayor's Court had "something

comparable to a diversion program," which he described as follows:

> Ms. Wilson, most of the time, probably every time, would have had contact with the people prior to their appearing in court, and she we [sic] would have a pretty good idea as to what was going on with the cases.
> . . . the case would be called. The person would appear before me. I would explain what the . . . diversion program consisted of.
> . . . .
> In essence, what would happen, we were interested not in punishing people, but in getting the revenue for the Village.
> And if the person felt that they didn't owe the money for some reason, they hadn't lived in the Village during the tax period in question or something along those lines,

---

[9]PID 715-16.

> had no income, whatever, what we would do is set up a conference with Ms. Wilson and they would talk and enter a not guilty plea at that point.
>
> I don't recall any . . . cases that would fit into that category that ever came back to court . . . if they reached a consensus that there was a tax liability there, that Ms. Wilson and the person would set up some sort of a payment plan and the payment plan would be taken care of.
>
> When that was paid and the court costs were paid, then the case would be dismissed.
> Q. Okay. The rules governing the diversion program, are they written down anywhere?
> A. No.

PID 238. Tax Director Wilson similarly testified that, after she repeatedly attempted to collect outstanding taxes from residents who had either appeared in Mayor's Court and agreed to payment plans or had not appeared as ordered, she would obtain a case number from Court Clerk Hunt. Hunt worked separately with residents to get them to pay affiliated court costs, while Wilson only addressed outstanding tax debt. Wilson's computer was not networked with Hunt's. If the residents appeared and either paid all outstanding taxes and court costs or agreed to another payment plan, the Mayor's Court "dismissed" the complaint. Subsequent complaints, issued after residents again failed to pay, could have different case numbers. In the Drakes' case, they appeared in Mayor's Court twice, and entered into at least two payment plans.

Tax Director Wilson kept track of delinquent taxpayers, aided by a computer program that produced monthly reports. She maintained case files for residents who had not paid outstanding taxes, which included documentation of when notices were sent, communications with the resident, payment plans the resident had agreed to, etc. Wilson attended Mayor's Court whenever there was a tax case in case persons brought before the court wanted to arrange a payment plan or provide her with their W-2 forms. PID 577.

Wilson testified that she spoke with Jessica Drake "a few times" regarding the Drakes' outstanding taxes, that Jessica told her she did not have the money to pay the taxes, and that Wilson believed her. PID 584-85.

Court Clerk Hunt testified that she handled the physical processing of arrest warrants when Magistrate Berryhill ordered such warrants, and that she took the signed warrants from the magistrate to the Village Police Department's dispatcher, where the warrants were entered into LEADS. PID 484. Hunt signed the notices to appear sent to the Drakes in January 2009. PID 497.

Mayor Riffe testified that he had no knowledge of the Mayor's Court's operations, financial or otherwise; had no training in its operation; and had no knowledge whether Court Clerk Hunt had any training. PID 640-44.

**B.**

Following discovery, Defendants moved for and were granted summary judgment. Regarding the § 1983 claims, the district court concluded that Magistrate Berryhill and Court Clerk Hunt were entitled to absolute immunity, Tax Director Wilson and Mayor Riffe were entitled to qualified immunity, and there was no basis for *Monell*[10] liability as to the Village and Village Council. The district court determined that the false-arrest claim failed because Magistrate Berryhill had probable cause to conclude that the Drakes failed to appear in Mayor's Court as ordered and that their failure to pay the outstanding income taxes was willful and intentional.[11]

---

[10]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[11]Jessica Drake passed away in November 2011. The district court permitted Jack to substitute as administrator of her estate.

**III.**

Two claims are at issue in this appeal–the asserted deprivation of procedural due process under 42 U.S.C. § 1983 and false-arrest under Ohio law.[12]

It is important to understand what Drake is not arguing. Drake does not contest Johnstown's authority to levy taxes on income or to collect those taxes through lawful means. He does not dispute that for several years he and Jessica were delinquent in paying outstanding taxes. Nor does Drake contest that the Village is permitted to prosecute the failure to pay tax as a crime. Rather, Drake challenges the district court's determination that probable cause existed to issue the arrest warrants, arguing that disputed issues of fact regarding why Berryhill issued the warrants should have precluded summary judgment. Drake also argues that the diversion program deprived the Drakes of their due process rights and was a custom and policy of the Village, and that the individual Defendants were not entitled to immunity.

**A.**

Review of the district court's grant of summary judgment to Defendants is de novo. *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 972 (6th Cir. 2012). The facts and inferences therefrom are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gregorcic v. Stow*, 229 F.3d 1151, 2000 WL 1140520, at *2 (6th Cir. 2000) (unpublished).

---

[12]The Drakes abandoned their equal protection claim and claim for prospective and injunctive relief in the district court. PID 911 n.4, 923 n.5. On appeal, Drake has abandoned the substantive due process and conspiracy claims and concedes that Magistrate Berryhill is entitled to absolute immunity for the federal claims. Drake Br. at 3.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005) (internal quotation marks omitted). Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Webb v. Ky. State Univ.*, 468 F. App'x 515, 520 (6th Cir. 2012).

To succeed on a municipal-liability claim, a plaintiff must demonstrate an official policy or custom that is either "facially unconstitutional as written or articulated" or has been implemented in such a manner as to demonstrate "deliberate indifference" to the "plainly obvious" risk of constitutional violation. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). In addition, liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), must rest on a direct causal connection between the policies or customs of the local government entity and the constitutional injury to the plaintiff. *Gray*, 399 F.3d at 617.

**B.**

**Section 1983:  Probable Cause Determination**

Drake argues that genuine issues of material fact precluded summary judgment on the question whether probable cause supported the Drakes' arrest warrants. He acknowledges nonetheless that Berryhill is entitled to absolute immunity on the federal claims. In any event, Drake contends that the district court improperly credited Berryhill's affidavit when questions of fact

remained regarding *why* Berryhill issued the warrants. According to Drake, Berryhill's explanation at deposition of why he issued the arrest warrants differed from his explanation in his subsequently-filed affidavit. Drake further contends that record evidence is also conflicting as to what charges prompted the warrants—whether it was failure to pay taxes, failure to pay in accordance with a court order, or contempt of court. The two cases Drake cites to support his argument stand for the propositions: 1) that a party may not assume a position in a legal proceeding contrary to an earlier position, to the prejudice of the other party and 2) that a deponent is not permitted to submit an affidavit at odds with his deposition testimony.

Defendants respond that, given Drake's concession that Berryhill was entitled to absolute immunity on the federal claims, Berryhill cannot be held liable for any aspect of the Drakes' arrest and detention and the only issue remaining is whether there is any evidence that Defendants *other than Berryhill* had involvement or control over the decision to arrest the Drakes. The district court answered that question in the negative. PID 917-19.

## C.

Under § 1983, probable cause to justify an arrest means facts and circumstances within the official's knowledge that are sufficient to warrant a prudent person in believing, in the circumstances shown, that the suspect has committed or is about to commit an offense. *Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013). "Whether [the Drakes'] constitutional rights were violated (and by extension, the viability of [their] § 1983 claims) therefore hinges principally on whether there was probable cause to arrest [them] in the first place." *Id.*

The district court concluded that Berryhill alone decided to issue the warrants and did so

based on sufficient evidence that the warrants were supported by probable cause:

> [T]here is sufficient evidence that the Drakes were arrested pursuant to a valid
> warrant supported by probable cause. It is undisputed that the decision to issue a
> warrant for the Drakes' arrest was made by Magistrate Berryhill. (Berryhill Dep. 34.)
> In his affidavit, Magistrate Berryhill avers that he made a finding of probable cause
> that the Drakes had violated § 191.19(a)(8) of the Codified Ordinances of the Village
> of Johnstown for failure to pay income taxes, and that the Drakes failed to appear as
> ordered in the . . . Mayor's Court on February 12, 2009 to answer to the violation.
> (Berryhill Aff. ¶ 8.) Section 191.19(a)(8) provides that an individual who willfully
> and intentionally fails, neglects, or refuses to pay their [sic] income taxes may be
> jailed for up to thirty days. (Doc. 41-18.) Here, it is undisputed that in 2007, the
> Drakes pled no contest to the charge of failing to file a tax return. (Jessica Drake
> Dep. 31-32.) It is also undisputed that the Drakes failed to make a single payment
> toward their outstanding income taxes or court costs, despite entering into several
> payment agreements with Wilson, and that they did not appear in the Mayor's Court
> as ordered on February 12, 2009. (Jessica Drake Dep. 63-64.) Thus, there was
> sufficient probable cause that the Drakes willfully and intentionally violated §
> 191.19(a)(8). There is no evidence that there was a violation of the Drakes'
> procedural due process rights.

PID 919.

**D.**

Drake cites no authority to support the proposition that Magistrate Berryhill's subjective

reasons for issuing the warrants are relevant where sufficient probable cause supported the warrants'

issuance. Without doubt, the Drakes' case files are far from the epitome of organization and the

Mayor's Court's record-keeping left much to be desired. For example, the multiple case numbers

assigned the Drakes and the fact that the cover of one of the files stated that their arrest warrants

issued because they were in contempt of court (as opposed to for failure to pay taxes and failure to

appear as ordered) are confusing and would frustrate any litigant. Nonetheless, when Berryhill,

Wilson, and Hunt's deposition testimony are read together, the Mayor's Court's record-keeping and

processes are sufficiently explained to undermine the claim that the Drakes' arrest was without probable cause.

Record evidence clearly establishes that there were several legitimate grounds for the Drakes' arrest on February 12, 2009, including their failure to pay outstanding income taxes and their failure to appear in Mayor's Court as ordered to answer for that failure. Assuming that there was internal confusion about which of several legitimate reasons for the Drakes' arrest was the actual reason, any valid reason that could justify their arrest (and therefore, the warrants) renders their arrests reasonable. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (observing that "[o]ur cases make clear that an arresting officer's state of mind . . . is irrelevant to the existence of probable cause . . . his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. . . . [T]he fact that the [arresting] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken *as long as the circumstances, viewed objectively, justify that action.*" (emphasis added) (citations and internal quotation marks omitted)). Thus, irrespective of Magistrate Berryhill's subjective reason for issuing the warrants (or confusion among various such reasons), the warrants and the arrests based on those warrants were constitutional.

**E.**

The question then becomes whether Drake presented sufficient evidence that a Defendant other than Berryhill "cause[d] the plaintiff to be subjected to deprivation of his constitutional rights," as § 1983 requires. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). We conclude that he did not. Although Court Clerk Hunt signed the summons and complaints accompanying the arrest warrants

and kept Magistrate Berryhill apprised of the Drakes' failure to pay court costs, there is no evidence

that she performed these or any other acts other than as quasi-judicial functions in her capacity as

Clerk of the Mayor's Court. *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988) (issuance of

arrest warrant was a "truly judicial act" for which court clerk enjoyed absolute immunity); *see also*

*Fish v. Murphy*, 22 F. App'x 480, 482 (6th Cir. 2001) (observing that one defendant, the Clerk of

the district court for the Southern District of Ohio, was clearly sued in his capacity as court clerk

performing quasi-judicial functions and was thus entitled to absolute immunity from suit for money

damages).

As part of her responsibilities for administering the Village's Tax Department and the tax

diversion program, Tax Director Wilson kept Magistrate Berryhill apprised of the Drakes'

delinquency in paying outstanding taxes, and signed the complaints against the Drakes. The

complaints against the Drakes were on the same form as the arrest warrants, which Magistrate

Berryhill signed. Drake presented no evidence that Wilson played anything other than an

administrative role in Berryhill's decision to issue warrants for the Drakes' arrest. *See Gregorcic*

*v. City of Stow*, 229 F.3d 1151, 2000 WL 1140520, at *3 (6th Cir. 2000) (noting that a city "can

certainly rely on the representations of staff members in pursuing a criminal complaint.")

Drake presented no evidence that Mayor Riffe played any role in the Johnstown's Mayor's

Court other than appointing Berryhill as magistrate.

As to the municipal Defendants, the Village and Village Council, the district court properly

dismissed them under *Monell* because Drake failed to establish a violation of constitutional rights

and failed to establish that any aspect of the Village's tax collection procedures targeted, approved,

or encouraged the allegedly unconstitutional conduct. *See* PID 921. Only Magistrate Berryhill's determination to have the Drakes arrested was the moving force behind their arrest, and Drake concedes that Berryhill is entitled to absolute immunity on the federal claims.

**F.**

Drake forfeited his final argument under § 1983: that the Drakes' challenge "is to the warrants themselves, and the factual underpinnings upon which they were based. As to that issue, *Franks v. Delaware*, 438 U.S. 154 (1978), . . . and it[s] progeny, are the controlling precedent." Reply Br. at 11; *see also* Drake Br. at 45. Drake did not request a *Franks* hearing below nor did he raise this issue. It is thus forfeited. *See 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586 (6th Cir. 2013).

**IV. False arrest under Ohio Law**

As to his false arrest claim, Drake argues that Tax Director Wilson, Court Clerk Hunt, and Magistrate Berryhill were not entitled to immunity under Ohio law.

"[T]o succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." *Krantz v. City of Toledo Police Dep't*, 365 F. Supp.2d 832, 837 (N.D. Ohio 2005) (citing *McFinley v. Bethesda Oak Hosp.*, 607 N.E.2d 936, 938–39 (Ohio App. 1992) (noting that one element essential to recovery for false arrest and false imprisonment is a showing that a detention or confinement "occurred without lawful justification")). The existence of probable cause to arrest defeats a false arrest claim. *Harvey v. Horn*, 514 N.E.2d 452, 455–56 (Ohio App. 1986). Probable cause is "[a] reasonable ground of suspicion, supported

- 18 -

by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Melanowski v. Judy*, 131 N.E. 360, 361 (Ohio 1921).

Under Ohio law, individual employees of a political subdivision generally are immune from civil actions to recover damages for "injury . . . or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.03(A)(6). Immunity exists unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [] liability is expressly imposed upon the employee by a section of the Revised Code." *Id.*

A political subdivision is not liable in damages in a civil action for injury caused by any act or omission of the political subdivision or an employee thereof in connection with a governmental function. Ohio Rev. Code § 2744.02(A)(1).

**A.**

Drake maintains that Tax Director Wilson had no authority to commence a criminal action or participate in sending taxpayers to jail, Court Clerk Hunt had no authority to issue substantive orders including the January 12, 2009 order that the Drakes appear in Mayor's Court, and that Magistrate Berryhill had no authority to create and administer a diversion program that deprived the Drakes of due process. Thus, Drake argues, a reasonable jury could conclude that these three Defendants acted manifestly outside the scope of their official responsibilities and recklessly. Drake Br. at 46-47.

The district court properly dismissed Drake's false arrest claim on the basis that the Drakes were arrested pursuant to valid warrants supported by probable cause. PID 922. As discussed, Magistrate Berryhill alone determined there was probable cause that the Drakes willfully and intentionally failed to pay Village income taxes and that the Drakes failed to appear in Mayor's Court on February 12, 2009, as ordered. Ordinance § 191.19(a)(8) provides that an individual who willfully and intentionally fails, neglects, or refuses to pay income taxes may be jailed for up to 30 days, and Drake does not contest that Johnstown is authorized to prosecute the failure to pay taxes as a crime. Under Ohio law, the existence of probable cause to arrest defeats a false arrest claim. *Harvey*, 514 N.E.2d at 455–56. Thus, the district court properly concluded that none of the Defendants could be liable for false arrest.

For these reasons, we AFFIRM the district court's grant of summary judgment to Defendants.